### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

MAXIMILLIAN NAPOLEAN WANNER,

<div style="margin-left:2em">Plaintiff,</div>

v.

ANDREW SAUL, Commissioner of Social Security,

<div style="margin-left:2em">Defendant.</div>

CIVIL ACTION NO. 3:19-CV-01524

(MEHALCHICK, M.J.)

### MEMORANDUM OPINION

Plaintiff Maximillian Napolean Wanner ("Wanner") brings this action under sections 205 and 1631 of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the following reasons, the undersigned shall order the Commissioner's decision be vacated and remanded.

I. **BACKGROUND AND PROCEDURAL HISTORY**

In December 2016, Wanner protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income, claiming disability beginning January 4, 2004, due to bipolar disorder, Asperger's syndrome, anxiety, and insomnia. (Doc. 5-5, at 5; Doc. 5-6, at 2). The Social Security Administration initially denied both applications in February 2017, prompting Wanner's request for a hearing, which Administrative Law Judge (ALJ) Susan Torres held on May 10, 2018. (Doc. 5-5, at 20; Doc. 5-6, at 32-33). In a

written opinion dated September 25, 2018, the ALJ determined that Wanner was not disabled from January 4, 2004, through the date of the decision, and therefore not entitled to benefits under Titles II or XVI. (Doc. 5-5, at 15). On July 3, 2019, the Appeals Council denied Wanner's request for review. (Doc. 5-2, at 2).

On September 4, 2019, Wanner filed the instant complaint. (Doc. 1). The Commissioner responded on November 13, 2019, providing the requisite transcripts from Wanner's disability proceedings. (Doc. 4; Doc. 5). The parties then filed their respective briefs, with Wanner raising four bases for reversal or remand. (Doc. 9; Doc. 10).

## II.   STANDARDS OF REVIEW

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905.[1] Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(d).

C.F.R. § 404.131.

A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled, the "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

B.   JUDICIAL REVIEW

The Court's review of a determination denying an application for benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial if the ALJ ignores countervailing evidence

or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Wanner was disabled, but whether the Commissioner's determination that Wanner was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.  THE ALJ'S DECISION[2]

In her written decision, the ALJ determined that "[Wanner] has not been under a disability, as defined in the Social Security Act, from January 4, 2004, through the date of this decision . . .." (Doc. 5-5, at 15). Further, the ALJ determined that Wanner was capable of performing a full range of work at all exertional levels with particular limitations discussed *infra*. (Doc. 5-5, at 10). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### A.  STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1520(b), 416.920(b). In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974.

Here, the ALJ determined that Wanner "has not engaged in substantial gainful activity since January 4, 2004, the alleged onset date." (Doc. 5-5, at 7). Thus, the ALJ's analysis proceeded to step two.

---

[2] At the outset, the ALJ determined that Wanner met the insured status requirements of the Social Security Act through March 31, 2018. (Doc. 5-5, at 7).

B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that the claimant does not have an impairment or combination of impairments that significantly limits his or her "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the ALJ analysis continues to the third step.

Here, the ALJ concluded that Wanner had the following severe impairments: bipolar disorder, anxiety, attention deficit hyperactivity disorder ("ADHD"), and a learning disability with regard to mathematics. (Doc. 5-5, at 8).[3]

C.   STEP THREE

At step three, the ALJ must determine whether an impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. Part 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ determined that none of Wanner's impairments, considered individually or

---

[3] Additionally, the ALJ found that Wanner suffered from "several" non-severe impairments "including obesity and Asperger's syndrome." (Doc. 5-5, at 8).

in combination, met or equaled the severity of a listed impairment. (Doc. 5-5, at 8). The ALJ considered the mental disorder listings under section 12.00 of appendix 1 – specifically, listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.10 (autism spectrum disorder), and 12.11 (neurodevelopmental disorders). 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00. (Doc. 5-5, at 8).

### D.   RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).

Here, based on her consideration of the medical opinions and other relevant evidence in the record, the ALJ determined that Wanner had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: Wanner (1) "has the ability to understand, to remember, and to carry out simple instructions in an environment free of fast paced production requirements, involving only simple work related decisions, with few workplace changes;" and (2) "is also limited to only occasional interaction with co-

workers and the public." (Doc. 5-5, at 10).

E.   STEP FOUR

Having assessed a claimant's RFC, step four requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is defined as work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, the ALJ found that Wanner could perform past relevant work as a cleaner or housekeeper as actually and generally performed. (Doc. 5-5, at 13). With this finding, Wanner was determined not disabled pursuant to 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). (Doc. 5-5, at 13). However, the ALJ found that other jobs exist in the national economy which Wanner could perform, so proceeded to discuss step five. (Doc. 5-5, at 13).

F.   STEP FIVE

At step five of the sequential analysis process, the ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If a claimant can adjust to other work, he or she will not be considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In her step-five analysis, the ALJ determined that Wanner was 8 years old on the alleged onset date, defined as a "younger individual age 18-49" as set forth by 20 C.F.R. §§ 404.1563, 416.963, and has "at least a high school education and is able to communicate in English" as considered in 20 C.F.R. §§ 404.1564, 416.964. (Doc. 5-5, at 13-14). The ALJ determined that upon consideration of these factors, Wanner's RFC, and the testimony of a vocational expert, "[Wanner] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 5-5, at 14). The ALJ specifically identified occupations of laundry laborer, bakery worker conveyer line, and machine tender/laminating, all unskilled jobs with at least 150,000 openings nationally. (Doc. 5-5, at 14).

## IV. DISCUSSION

On appeal, Wanner submits that (1) the ALJ erred and abused her discretion by failing to consider particular limitations arising from Wanner's bipolar disorder, his anxiety, his ADHD, and his learning disorder; (2) the ALJ erred and abused her discretion in failing to consider limitations arising from conditions which the ALJ did not consider to be severe despite evidence of their relations to ongoing issues and limitations; (3) the ALJ failed to consider limitations which should have been labeled severe; and (4) the ALJ erred and abused her discretion by failing to give proper weight to medical opinions from Dr. Karen Medzoyan. (Doc. 9, at 11-25).

### A.  THE ALJ FAILED TO IDENTIFY SUBSTANTIAL EVIDENCE INCONSISTENT WITH DR. MEDZOYAN'S OPINIONS.

Wanner's most specific assertion of error is that the ALJ failed to give proper weight to the medical opinions of Dr. Karen Medzoyan ("Dr. Medzoyan"), Wanner's treating

physician. (Doc. 9, at 21). In challenging the ALJ's decision to give Dr. Medzoyan's opinions limited weight, Wanner submits that Dr. Medzoyan was in the best position to determine his non-exertional limitations because she treated him for more than 10 years. (Doc. 9, at 24). As noted by the ALJ, Dr. Medzoyan opined that Wanner "would have marked restrictions with his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." (Doc. 5-5, at 12). The ALJ also noted Dr. Medzoyan's determination that Wanner would have "marked restrictions with his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." (Doc. 5-5, at 12). Finally, the ALJ noted Dr. Medzoyan's opinion that Wanner "would be extremely limited with his ability to tolerate normal levels of stress and would need to miss 6-8 days of work per month." (Doc. 5-5, at 12). Dr. Medzoyan wrote in her assessment that Wanner would not be able to work on a regular and sustained basis: "Due to relapsing/remitting course of bipolar disorder, Max is capable of working during periods of remission. He is currently struggling with a depressed episode with suboptimal hygiene, poor motivation, poor energy, impaired concentration." (Doc. 5-18, at 91).

In this case, the evidence shows that at the time of the residual functional capacity assessment, Dr. Medzoyan had treated Wanner monthly from June 16, 2008, until May 12, 2017, a period of nearly nine years. (Doc. 5-18, at 88). This treatment history clearly qualifies Dr. Medzoyan as a treating source whose medical opinion deserves the presumption of controlling weight. *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

"A cardinal principle guiding disability eligibility determinations is that the ALJ

accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317 (internal quotation marks omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)); *see* 20 C.F.R. §§ 416.920a(d)(3), 416.945. Where the "ALJ provide[s] sufficient reasons for the weight given to the evidence from [a] . . . treating physician[]," which reasons, in most cases, can be set forth in a sentence or short paragraph, there is no basis for disturbing the ALJ's weight determination. *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 807 (3d Cir. 2018). The ALJ gave limited weight to Dr. Medzoyan's opinion because (1) it was "not supported by the counseling/progress notes described above and contained through the record;" (2) Wanner had not required inpatient psychological admissions since 2010; (3) Wanner has friends, including a girlfriend; (4) Wanner has worked part-time over the past four years; and (5) Wanner routinely spends time with others playing cards and video games. (Doc. 5-5, at 12).[4] For the reasons discussed below, the ALJ failed to identify substantial evidence inconsistent with Dr. Medzoyan's opinion.

First, the ALJ identifies no specific evidence within the counseling/progress notes which would be inconsistent with Dr. Medzoyan's opinions regarding Wanner's ability to

---

[4] The facts that Wanner is able to maintain friendships, including a girlfriend, and that he routinely plays cards and video games are not inconsistent with Dr. Medzoyan's opinions that he would have marked restrictions with his ability to maintain a consistent work schedule without interruptions and without having to miss 6-8 days per month. *See* (Doc. 5-5, at 12).

show up to work. (Doc. 5-5, at 10-11). The ALJ must develop the record and explain findings so as to permit meaningful review; the Court is precluded from conducting its own independent analysis of the record. *Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001) (noting that the court may not rely on medical records found in its own independent analysis and not mentioned by the ALJ); *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (explaining that the ALJ must discuss the evidence and explain the reasoning for its determination). The ALJ, in describing the substance of Wanner's counseling/progress notes, does not touch upon Wanner's ability to perform within a set schedule, maintain regular attendance and punctuality, avoid work interruptions due to the onset of psychologically-based symptoms, or his need to miss 6-8 days of work per month. (Doc. 5-5, at 10-11); *see* (Doc. 5-5, at 12). Additionally, it was improper for the ALJ to simply say that the record contains evidence contradicting Dr. Medzoyan's opinion, rather inconsistent evidence must be identified in the decision. *See Burnett*, 220 F.3d at 119-20. The ALJ's descriptions of Wanner's counseling/progress notes fail to show inconsistencies between those notes and Dr. Medzoyan's opinion. (Doc. 5-5, at 10-11; Doc. 5-18, at 91).

Second, the ALJ improperly used Wanner's lack of inpatient psychological admission since 2010 to counter Dr. Medzoyan's opinions. Before inferring from lack of medical treatment that a claimant is capable of higher functionality, the ALJ must seek explanation for the lack of medical treatment "to determine whether there are good reasons for such behavior." *Goss v. Astrue*, 2014 WL 888497, at *10 (M.D. Pa. 2014). If evidence of good reason is not in the record, the ALJ must question the claimant on the subject. *Goss*, 2014 WL 888497, at *10. At his administrative hearing, the extent of the questioning on the subject of

Wanner's inpatient psychological admission was to determine the reason he was admitted. (Doc. 5-5, at 42). The ALJ made no inquiry into Wanner's reasons for lack of admission in the years since 2010. (Doc. 5-5, at 21-60). Having not made such inquiry, the ALJ was precluded from using Wanner's lack of inpatient admission as substantive evidence inconsistent with Dr. Medzoyan's opinion. *See Goss*, 2014 WL 888497, at *10.

Third, though Wanner did occasionally perform part-time work over the past four years, his struggle to maintain such work supports Dr. Medzoyan's opinion that he would have limited ability to sustain a full-time work schedule. *See* (Doc. 5-5, at 12). "The question posed by a disability determination is whether the claimant can engage in substantial gainful activity. An attempt to work that ultimately fails because of the symptoms of the disability is not substantial gainful activity." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). Wanner's first job was at McDonald's, a job he held for six months on a part-time basis; his second was through Job Corps, which he held for two to three weeks; the third with Planet Fitness, which he held for two months; and the fourth was at Weis Markets, which he held for approximately four months. (Doc. 5-5, at 24-26). Wanner was unable to maintain these jobs because of his need to attend appointments to control his symptoms, his precarious living situation, and his struggle with the "relapsing/remitting course of bipolar disorder." (Doc. 5-5, at 27, 30-33); *see* (Doc. 5-18, at 91). Wanner's struggle to maintain these part-time jobs cannot be used by the ALJ as evidence that Wanner's work history is inconsistent with his treating physician's opinion that he would be limited in his ability to sustain a full-time schedule without interruptions. *See Morales*, 225 F.3d at 319; *see also Barnett v. Berryhill*, 2018 WL 7550259, at *7 (M.D. Pa. 2018) ("It has long been recognized that being available for part-time work is

not necessarily inconsistent with disability allegations."). *Morder v. Colvin*, 216 F. Supp. 3d 516, 528 (M.D. Pa. 2016) (holding that a doctor's release to light work on a part-time basis does not provide evidence that the claimant could work in any capacity on a full-time basis).

Dr. Medzoyan had treated Wanner approximately every month for nine years at the time of her residual functional capacity assessment. (Doc. 5-18, at 88). She assessed that Wanner is not a malingerer and that his impairment had lasted, or could be expected to last, at least 12 months. (Doc. 5-18, at 88). She opined that he would have marked limitations in performing activities within a schedule, maintaining regular attendance, and maintaining punctuality within customary tolerances. (Doc. 5-18, at 89). She also opined that Wanner would have marked limitations in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. (Doc. 5-18, at 90). She assessed that he would need to miss work at least 6-8 days per month. (Doc. 5-18, at 91). In her decision, the ALJ failed to identify substantial evidence inconsistent with these opinions, therefore these opinions were entitled to controlling weight. (Doc. 5-5, at 10-13); *see Scouten*, 722 F. App'x at 290. However, the ALJ afforded these opinions only limited weight and did not incorporate them into Wanner's RFC. (Doc. 5-5, at 10). Furthermore, the Vocational Expert at Wanner's administrative hearing testified that four or more days per month of absence would preclude employment, therefore the ALJ's failure to properly address Dr. Medzoyan's opinion does not constitute harmless error. (Doc. 5-5, at 58). For these reasons, vacatur and remand is warranted.

Because the Court orders vacatur of the ALJ's decision based on an erroneous

evaluation of the medical opinion evidence, it declines to address Wanner's other allegations of error, as "[a] remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016).

## V.   CONCLUSION

Based on the foregoing, the Commissioner's decision to deny Wanner benefits is ordered **VACATED** and **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.


Dated: August 1, 2020                                     *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States Magistrate Judge**